# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE CALOURO, | CASE NO. 1:04-cv-6665 AWI TAG |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Irene Calouro ("Claimant") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq.[2]  Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). On October 5, 2005, Claimant filed her opening brief. (Doc. 9). The Commissioner filed his opposition to the appeal on November 28, 2005. (Doc. 13). Claimant did not file a reply brief.

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] Various documents, including the decision of the administrative law judge, indicate that Claimant concurrently applied for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (See, e.g., Administrative Record ("AR") 20, 63, 64). The record, however, does not contain an application for SSI. (See generally AR). Claimant did request benefits under Part A of Title XVIII of the Act, 42 U.S.C. § 1395(c) et seq. (See AR 92-95). Part A of Title XVIII of the Act provided for hospital coverage for those entitled to disability or old-age benefits. 42 U.S.C. § 1395(c) et seq.

1

**JURISDICTION**

On August 15, 2002, Claimant filed a "leads/protective filing worksheet"[3] and, on August 22, 2002, completed disability reports, alleging an onset date of August 16, 2000.[4] (Administrative Record ("AR") 92, 113). In her August 2002 disability reports, Claimant alleged that she had a herniated disc, carpal tunnel [syndrome], a fractured tailbone, and was undergoing physical therapy for a fracture to her right arm, which ailments limited her ability to move her head and neck, prevented her from performing repetitive work, and precluded her from sitting down "too long." (AR 113). Claimant filed her application for DIB on September 4, 2002. (AR 93-95). The application was denied initially and on reconsideration. (AR 63, 74).

On March 11, 2004, a hearing was held before Administrative Law Judge ("ALJ") James E. Ross. (AR 35-62). ALJ Ross found that Claimant was not disabled in a written decision dated April 7, 2004. (AR 17-26). The Appeals Council denied Claimant's request for review on September 8, 2004. (AR 4-5). The ALJ's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court. 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of receipt of the Appeals Council's decision. Because the Commissioner allows (5) five days for receipt of the decision, the Claimant has sixty-five (65) days to file a complaint in the district court. Id.; (AR 4-5). On November 12, 2004, Claimant timely initiated her appeal in the District Court for the Northern District of California. (See Court File, compl.). On December 6, 2004, pursuant to stipulation, the case was transferred to the Eastern District of California and, the documents were docketed in this Court on December 7, 2004. (See Court file; Doc. 1).

///

///

---

[3] To qualify as an effective disability insurance claim, an application for benefits must be submitted on a prescribed form. 20 C.F.R. § 404.610. However, a written statement indicating a person's intent to claim benefits can, if certain coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 404.630.

[4] The Social Security Administration determined that Claimant's actual onset date was August 22, 2002 – the date that she protectively filed her application for benefits. (AR 123).

**STATEMENT OF FACTS**

The relevant facts relevant have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by the Claimant and the Commissioner, and only will be summarized here. To the extent necessary, additional facts will be addressed in this Court's analysis.

Claimant was born on August 10, 1954, making her 49 years old at the time of the March 11, 2004, administrative hearing. (AR 35, 123). Claimant testified that she had a high school diploma. (AR 45). She added that she and her 53-year-old unemployed husband live with her father in the latter's house. (AR 44-45).

Regarding her work history, Claimant stated that, on January 23, 1999, while working as a dispatcher at a plumbing company, she injured her neck, for which she had disc fusion surgery. (AR 38). She testified that she tried to return to work in February 2000, but experienced increasing pain in her shoulders and neck and, in August 2000, was told by her treating physician that the fusion had separated and that she could not return to her dispatcher job. (AR 38-39, 45-47). Claimant added that she has not worked since August 2000. (AR 45). She further testified that she previously had worked as a cashier, a stockroom clerk, a "fab" operator, and placing wafers to implant ions at an electronics company. (AR 41-42, 57-58).

As to other ailments, Claimant explained that she had experienced shocks in her right hand before she stopped working, but they were resolved by her 1991 carpal tunnel release surgery. (AR 39, 48). Claimant testified that, in 2002, she was involved in a car accident and suffered a fractured tailbone, a broken wrist and lower arm, and an injury to her right hand. (AR 39-40, 48-49).

With respect to problems and limitations related to her impairments, Claimant testified that she experiences pain in her neck and shoulders and/or back, especially when she keeps her head down or constantly moves it around. (AR 40-41, 53). According to Claimant, her neurosurgeon recently prescribed Tylenol to treat her pain, and when she wears her cervical collar it prevents her from feeling the pain. (AR 52-53). Claimant further testified that she has difficulty reaching, bending, lifting, and, because of the injury to her tailbone, sitting or standing for more than approximately two hours at a time. (AR 42-43). Moreover, despite attending physical therapy, the

broken wrist she sustained prevents her from picking things up as well as she used to, and she does not have a full range of wrist and hand motion. (AR 50-51). Claimant testified that, when she performs repetitive tasks, her right hand hurts and her left hand becomes numb, adding that the loss of strength in her hands prevents her from applying a lot of pressure to, for example, clean a stove. (AR 40).

With respect to the activities of daily life, Claimant testified that she can vacuum, perform household chores, and work in the yard if she wears her cervical collar. (AR 41, 60). In addition, she cares for her personal hygiene, cooks, does the laundry, grocery shops, and drives without difficulty, although she expressed concern about her own and other's safety when she has to turn to the right or left. (AR 51-52, 60). Claimant stated that she crochets, but her right wrist hurts if she crotchets for an extended period of time. (AR 61).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(quotations and citations omitted); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Sec'y of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citing Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400, 91 S.Ct. at 1426-1427. If the evidence supports more than one rational

4

interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Sec'y of Health and Human Serv., 839 F.2d 432, 433 (9th Cir. 1987).

## RELEVANT LEGAL FRAMEWORK

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520. At step one, a determination is made as to whether the claimant is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(b). If she is not, the decision maker proceeds to step two, at which point he determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c).

If a claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to step three, which requires the decision maker to compare the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets

or equals one of the listed impairments, the claimant conclusively is presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to step four, at which point it must be determined whether the impairment prevents the claimant from performing past work. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984). The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. Kail, 722 F.2d at 1498.

**ADMINISTRATIVE FINDINGS**

The ALJ found at step one that Claimant "has not engaged in any substantial gainful activity since the alleged onset of disability." (AR 21, 25). At step two, the ALJ found that Claimant had a history of cervical fusion, right carpal tunnel release, and distal radius fracture, and that these impairments constituted severe impairments. (AR 25). At step three, the ALJ assessed whether Claimant's impairments were among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). The ALJ concluded that Claimant's impairments, alone or in combination, did not meet or equal Listing 1.04 (spine disorders) or any other listed impairment. (AR 21, 25).

///

1   At step four, the ALJ found that Claimant was able to perform her past relevant work as a
2   dispatcher. (AR 21, 26). The ALJ addressed in detail the evidence upon which he relied in
3   determining that Claimant retained the residual functional capacity ("RFC") to "perform a significant
4   range of light work," and, applying Social Security Ruling ("SSR") 96-7p, explained his basis for
5   rejecting, as not entirely credible, Claimant's subjective testimony concerning her pain. (AR 21-26).
6   In the event that Claimant could not perform her dispatcher job, the ALJ rendered an alternate step
7   five finding that, in light of Claimant's RFC, age, education, and transferrable skills, there existed
8   a significant number of sedentary or light work in the national economy that she was capable of
9   performing. (AR 25-26). Accordingly, the ALJ concluded that Claimant was not disabled and, thus,
10  not eligible for disability benefits. (AR 26).

**ISSUES**

Claimant requests that this Court find her disabled or remand for further administrative proceedings because the ALJ improperly applied the law and his findings were not supported by substantial evidence. (Doc. 9). Specifically, Claimant alleges that:

    A. The ALJ improperly rejected the opinion of Claimant's treating physician

    B. The ALJ did not abide by the law when he took administrative notice that there were available jobs that Claimant could perform

    C. The ALJ failed to find that Claimant's impairments met Listing 1.05

    D. The ALJ erroneously discounted Claimant's testimony as not credible

As discussed above, this Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.  The ALJ erroneously rejected the opinion of Claimant's treating physician.**

Claimant first argues that the ALJ erroneously rejected the opinion of Claimant's long-term, treating physician, Hamid Mehdizadeh, M.D., without providing adequate reasons. (Doc. 9, pp. 4-5). Claimant asserts that the ALJ's proffered rationale – that the medical records reveal that Dr. Mehdizadeh had not seen Claimant since February 2002 and his opinion appeared to be an

7

accommodation to Claimant that was based solely on old clinical findings, rather than recent diagnostic evidence – was belied by records evidencing that Dr. Mehdizadeh had examined or evaluated Claimant as recently as January 9, 2004, when he ordered x-rays. (Doc. 9, p. 5). Claimant further asserts that her condition has worsened, as evidenced by documents purportedly attached to the opening brief.[5] (Id.). In a January 9, 2004, opinion sent to Claimant's counsel, Dr. Mehdizadeh reiterated his February 20, 2002, report that Claimant's C5-6 and C6-7 fusion had healed solidly. (AR 173, 325). This was confirmed by an x-ray taken on January 9, which record the ALJ did not have knowledge of as it was not mentioned in the January 9, 2004, opinion, and the x-ray report was not submitted until Claimant sought review from the Appeals Councils. (AR 16; see generally AR 173-231, 325-26).

Dr. Mehdizadeh also summarized Claimant's history of right carpal tunnel surgery and listed the injuries she sustained in an April 2002 automobile accident. (AR 325). Dr. Mehdizadeh stated that Claimant currently complained of "a lot of neck, shoulder, and arm pain with a weak feeling in the right hand, causing her to drop things." (AR 325). According to the report, she also complained of pain and shocks in her right hand, the inability to sit for long periods of time because of the fractured tailbone that she had sustained in the car accident, and increased pain in her neck, shoulders, and arm when she tried to keep her arm and shoulder in a raised position. (Id.). Based on these self-reported symptoms, Dr. Mehdizadeh determined that Claimant would not benefit from further neurosurgical evaluation or surgical intervention, but that she should follow a conservative treatment course, which included wearing a cervical collar. (AR 325-26). He concluded that Claimant was totally disabled and would not be able to engage in work in the future, based upon her inability to perform "heavy lifting, bending, stooping, pulling, pushing, frequent neck motion . . . prolonged sitting, standing, and driving." (Id.).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who

---

[5] No additional medical records were supplied by Claimant. (See generally Court file and docket sheet). Moreover, even if new records were included, they would have to meet stringent rules before having any effect on this Court's recommendation. See 42 U.S.C. § 405(g); Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984) (discussing requirements for a remand based on new evidence).

8

neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, a treating physician's opinion is given special weight because of his or her familiarity with a claimant's physical condition. Id.; Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989); see also Smolen v. Chater, 80 F. 3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians"); SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996) (the opinions of a treating physician ordinarily should be given great weight).

Regardless of the weight given to a treating physician's medical opinion, it is not binding on the ALJ with respect to the ultimate determination of disability. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-1195 (9th Cir. 2004) (treating physician had opined that claimant "met or equaled the criteria" for a listed impairment under 20 C.F.R. § 404 Subpt. P App. 1); Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989) ("treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability"). Accordingly, although entitled to great weight, a treating physician's opinion is not conclusive and may be rejected by the ALJ under appropriate circumstances. Where a treating physician's opinion is not contradicted by another physician, it may be rejected by the ALJ only for "clear and convincing" reasons supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citation omitted). The same test applies to examining physicians: the ALJ must give clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate reasons supported by substantial evidence in the record" for rejecting those opinions that have been contradicted. Lester v. Charter, 81 F.3d 821, 830-31 (9th Cir. 1995).

Courts within the Ninth Circuit have recognized various reasons deemed sufficient for the ALJ to disregard a treating or examining physician's opinion. These reasons include: conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability,

and the lack of medical support for physicians' reports that are based substantially on the claimant's subjective complaints of pain. Flaten v. Sec'y of Health & Human Serv., 44 F.3d 1453, 1463-1464 (9th Cir. 1995); Fair, 885 F.2d at 604. The ALJ also may disregard a physician's opinion that is brief, conclusory, and unsupported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001); Magallanes, 881 F.2d at 751.

In the instant case, the ALJ discussed Claimant's medical history and the treatments she underwent for her various ailments and injuries, as reported by her treating physicians and a physical therapist. (AR 21-23). ALJ Ross also addressed the reports of examining consultants and non-examining DDS physicians. (AR 21-24). The ALJ decided to accord substantial weight to the December 2002 report of DDS consultant Benjamin Chang, M.D., who fully examined Claimant after she had been discharged from treatment for all of her ailments and concluded that she was not as limited as Dr. Mehdizadeh stated in his January 2004 progress report. (AR 23). The ALJ noted that the records indicated that Dr. Mehdizadeh had not seen Claimant since February 2002, and his January 19, 2004 opinion did not appear to be based on any recent x-rays of her neck, right arm, or coccyx (tailbone). Accordingly, the ALJ concluded that Dr. Mehdizadeh rendered an opinion as "an accommodation to the claimant and based on old clinical findings." (AR 24). Even if the January 9, 2004, x-ray, and Dr. Mehdizadeh's medical records from July 17, 2003, been before the ALJ, those records only would have revealed that the fusion remained solid and that, in 2003, Claimant reported increased pain following her April 2002 automobile accident. (AR 15, 16). The ALJ provided sufficient, legitimate, and substantial reasons to reject Dr. Mehdizadeh's opinion – specifically the doctor's failure to provide ongoing medical treatment and the absence of objective, clinical findings to support Dr. Mehdizadeh's conclusion that Claimant suffered extensive exertional restrictions. (AR 325-26); see Tonapetyan, 242 F.3d at 1149 (9th Cir.2001); Flaten, 44 F.3d at 1463-1464; Fair, 885 F.2d at 604; Magallanes, 881 F.2d at 751.

Moreover, the ALJ may reject a treating doctor's opinion when it is based substantially on a claimant's subjective complaints of pain, which appears to be the sole basis for Dr. Mehdizadeh's conclusions. (AR 325-326); Flaten, 44 F.3d at 1463-1464; Fair, 885 F.2d at 604. A review of Claimant's medical records, which the ALJ summarized in his decision, lends support to the ALJ's

finding that Dr. Mehdizadeh's January 9, 2004, is an accommodation to Claimant that is not supported by objective evidence. (AR 24). For example:

(1) Dr. Mehdizadeh's treatment records indicate that Claimant's separated disc became fused and that the carpal tunnel release surgery performed on her right hand had alleviated her "shock" symptoms. (AR 15, 173, 177, 189). In a December 20, 2002, report, which Dr. Mehdizadeh prepared after Claimant had been discharged from all treatment, including the injuries she sustained in her April 2002 automobile accident, he noted that Claimant suffered occasional left shoulder pain and recommended a conservative course of treatment, yet he concluded that she was incapable of returning to her dispatcher job and could not perform any work that required heavy lifting, bending, stooping, pushing, pulling, or frequent neck motion. (AR 173, 261, 302). Dr. Mehdizadeh next saw Claimant on April 17, 2003, when she complained of increased pain due to her car accident, but he continued with the conservative treatment plan and did not see her again until January 9, 2004. (AR 15-16, 325-26). There is no indication that Dr. Mehdizadeh physically examined Claimant or had any diagnostic tests performed, other than (1) at least two MRIs of her cervical spine, one before and one after Claimant underwent surgery; (2) periodic x-rays of her neck that, commencing in 2002, evidenced that her discs had fused; (2) diagnostic and pre-operative tests before Dr. Mehdizadeh performed the January 2001 carpal tunnel release surgery; and (3) a July 31, 2000, MRI which indicated that Claimant had some infarctions in her brain that caused occasional, uncontrollable, twitching in her left hand and wrist. (Id., see generally AR 173-231).

(2) The emergency room and out-patient treatment records from Hanford Community Medical Center and Dr. D. Lancy Allyn, a Board-Certified orthopedic surgeon, for the injuries Claimant suffered in the April 2002 automobile accident, reveal that she underwent surgery for a right distal radius fracture. (See AR 260-94). Dr. Allyn saw Claimant approximately twice per month until finding, based on x-rays and physical examinations, that her fractured coccyx and right distal radius had fully healed, and that physical therapy had improved Claimant's strength, range of motion, and flexion in her right wrist. (AR 260-263). Before discharging Claimant from his care, Dr. Allyn ordered additional physical therapy. (AR 264). Dr. Allyn's prognosis was that Claimant would continue to suffer from slight pain in her right wrist and coccygeal area, and a slight loss of

11

motion in her right wrist. (AR 261). It is noteworthy that none of Dr. Allyn's records were sent to Dr. Mehdizadeh, as they were marked: "Copy To: No Recipients Listed," and, therefore, Dr. Mehdizadeh presumably accepted Claimant's description of the severity of her injuries and the degree to which they had healed when he prepared his January 2004 opinion. (AR 260-82). In addition, with respect to past medical conditions, Claimant informed Dr. Allyn that she had no complications with respect to her 2001 carpal tunnel release or 1999 spinal surgeries, and complained only of pain relating to the injuries sustained in the car accident. (AR 266-67).

(3) On September 6, 2002, after several weeks of physical therapy, Claimant's right wrist pain had decreased by 95%, her flexion and grip strength had increased, and she was able to engage in the activities of daily living without any problems. Claimant was discharged from physical therapy with instructions to follow a home exercise plan. (AR 302).

(4) On December 7, 2002, Dr. Chang performed an consultative orthopedic examination of Claimant. (AR 309-312). Dr. Chang observed that Claimant walked with a normal gait and had no difficulty getting on or off the exam table. Claimant reported that she had intermittent, aching, dull neck and shoulder pain, which occasionally radiated down her left arm, but for which she took no medications. (AR 310). She added that the pain worsened with prolonged sitting, standing, or use of her left arm. (Id.). Claimant informed Dr. Chang that she watched the televison, washed the dishes, cleaned the house, did the laundry, and drove short distances. (AR 310). On examination, Dr. Chang noted mild tenderness on palpitation of the cervical muscles, but reported negative straight leg raising and the ability to walk on heels, toes, and both in tandem. (AR 310-11). Overall, he stated that Claimant could stand, walk, and sit for six hours in eight hour workday without the need for assistive devices. (AR 311). Dr. Chang further assessed that Claimant could lift and/or carry 10 pounds frequently and twenty pounds occasionally, had postural limitations with respect to bending, stooping, crouching, crawling, pushing, and pulling, and occasionally could reach, handle, feel, grasp, and finger with the bilateral hands and upper extremities. (AR 312). Dr. Chang did not identify whether Claimant's postural limitations totally restricted her from engaging in the listed activities, or merely prevented her from performing them on a regular, unlimited basis. (Id.).

///

(5) On December 30, 2002, a DDS non-examining physician concluded that, given Claimant's self-reported daily activities and the objective records, Dr. Chang's assessment of Claimant's restrictions was overstated. The non-examining assessment, detailed below, was affirmed on May 22, 2003. The DDS physician reported that Claimant could frequently lift and/or carry ten pounds and, occasionally, 20 pounds; she could sit, stand, and walk for six hours in an eight hour workday; occasionally climb, balance, stoop, kneel, crouch, crawl, and reach over her head; and was unlimited as to handling (gross manipulation), fingering (fine manipulation), and feeling. (AR 316-323).

Based on the foregoing, the Court finds that ALJ Ross properly set forth both specific and legitimate reasons for discounting the opinion of Dr. Mehdizadeh, as it was not supported by the medical records generally, his own treatment reports, or his review of medical records by other treating sources.

**B.   The ALJ improperly engaged in fact-finding with respect to available jobs.**

Claimant contends that the ALJ legally erred when he took administrative notice that her residual functional capacity ("RFC") would enable her either to do her past relevant work or that there were numerous jobs that existed in the national economy that she could perform, without the benefit of testimony by a vocational expert ("VE"). (Doc. 9, p. 6).

The ALJ found, at step four, that Claimant could return to her past relevant work as a dispatcher. (AR 21, 26). Here, Claimant argues that the ALJ erred with respect to a step five finding,[6] which the ALJ made only in the alternative, and which is irrelevant upon a finding that a claimant is capable of returning to past relevant work. 20 C.F.R. § 404.1520(e) and (f); (Doc. 9, p. 6; AR 25-26). Accordingly, if the ALJ did not err in finding that Claimant was able to return to her dispatcher job, there will be no need to address whether his step five finding was improper.

At step four, the ALJ applies Claimant's RFC to the physical and mental demands of her previous relevant work ("PRW") and decides whether Claimant is capable of returning to the PRW.

---

[6] If the claimant is found incapable of performing her past work at step four, the ALJ determines, at step five, whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(f)

13

With respect to the requirements of the PRW, the claimant provides most of the information regarding what the job entails. Id. The burden lies on the claimant, and the ALJ must consider the claimant's reasons for not being able to return to her PRW, medical records evidencing limitations on the claimant's ability to meet the demands of the job, and, occasionally, supplemental information about the work from other sources, such as the Dictionary of Occupational Titles. Id. If the ALJ finds that the claimant can return to her PRW, he must explain the evidence upon which he relied to support his conclusion. Id. Specifically, the ALJ must set forth findings of fact that state: (1) the claimant's RFC;[7] (2) the physical and mental demands of her PRW; and (3) that the claimant's RFC would enable her to return to her PRW. SSR 82-62; 20 C.F.R. § 404.1560(b); Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001); Burrow v. Barnhart, No. 05-35583, 2007 WL 684130, *2 (9th Cir. March 7, 2007).

Claimant's description of her job varied. In an April 2000 consultation for her workers' compensation claim, Claimant told the examining doctor that her job requires sitting and answering the phone with a headset, entering information into a computer, standing, walking, pulling files, faxing invoices, and occasionally stooping, bending, and lifting files, and she was restricted with respect to frequent neck motion. (AR 148). In her August 20, 2002, disability application, Claimant reported that the dispatcher/operator work entailed taking service orders over the telephone; entering information on the computer; walking, stooping, kneeling, and crouching four hours daily; standing, sitting, reaching, writing, typing, and/or handling small objects eight hours daily; crawling one hour; lifting and carrying storage boxes weighing between 20 and 25 pounds; handling, grabbing, and/or grasping big objects and climbing three hours per day; and supervising one or two people. (AR 113-14). On her September 25, 2002, disability work history report, Claimant increased the number of hours involved in various activities, stated that she lifted ten-to-twenty pound boxes of invoices on a quarterly basis, and added that, since the company had become computerized, the job

---

[7] The RFC assessment is made before step four; it is not applied until the ALJ finds that the claimant's impairments do not meet or equal a listing at step three. See 20 C.F.R. §§ 404.1520(e) and (f); 1545(a)(5)(i). Claimant does not dispute its accuracy and, thus, it is not discussed herein. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001); Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz. 2005) (both holding that reviewing courts address only arguments raised by the claimant on appeal from the Commissioner's decision).

involved sitting and typing, standing up to pull invoices as needed, and bending, stooping, and walking. (AR 128, 133).  At the hearing, Claimant testified that she could not return to the dispatcher job because repetitive work caused pain and numbness in her hands and she suffered neck pain. (AR 40).

In his decision, the ALJ summarized the medical records from Claimant's treating sources, consultative examining physicians, and non-examining DDS doctors, as noted above. (AR 21-24). The records reported that Claimant's various injuries had healed, although she likely would continue to have mild pain in her tailbone and right wrist. (See, e.g., AR 39, 40, 48, 266-67 (self-report that carpal tunnel surgery resolved right-hand symptoms, which belied her testimony that she could not perform repetitive tasks, and, as of September 2002, no disc fusion problems); treating physician's record that her fractured coccyx and distal radius had healed (AR 260-63); Dr. Chang's findings that she had neck pain but, otherwise, only limited restrictions (AR 309-12); and the lack of aggressive treatment for her subjective complaints of severe pain (AR 15-16, 325-26) (see also Section D – Claimant's credibility, below)). The ALJ specifically stated that Claimant retained the RFC to lift twenty pounds occasionally, lift and carry ten pounds frequently, stand, walk, and sit for an eight hour workday, and was restricted only with respect to repetitive, forceful grasping or twisting with her right arm and overhead reaching. (AR 21). The ALJ found that, since the company she had worked for had started using computers, the demands of Claimant's dispatcher job "required sitting for most of the day and lifting up to 20 pounds occasionally." (AR 20). Based on Claimant's RFC and the requirements of Claimant's PRW, the ALJ concluded that Claimant was capable of performing the physical requirements of the job and, evidently, found that there were no mental demands that precluded Claimant from returning to her dispatcher job. (AR 21).

Because the ALJ satisfied the requirements to find that Claimant could return to her past relevant work under sentence four, any alleged error with respect to his alternative sentence five findings are irrelevant, because Claimant already had been deemed not disabled. Thus, the undersigned finds that the instant issue does not raise a meritorious argument.

///

///

**C.    Claimant's impairments met or equaled Listing 1.05.**

Claimant next asserts that the medical records evidence that she satisfies the requirements to meet or equal Listing 1.05C, which listing the ALJ failed to consider or to explain why Claimant did not satisfy the criteria for it. (Doc. 9, p. 6).

In 2001, various categories of the listed impairments were amended and reorganized, including the musculoskeletal listings. See 66 Fed.Reg. 58,010, 2001 WL 1453802 (Nov. 19, 2001). The 2001 amendments dispensed with former Listing 1.05C (vertebrogenic disorders)[8] and recommended that new Listing 1.04A should be used in its stead. Id.; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A (2004).

The amended Listing 1.05C addresses the amputation of one upper and one lower extremity, which is not an impairment applicable to Claimant. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C; (see generally AR). The ALJ, therefore, had no obligation to consider whether Claimant was presumptively disabled based on the amputation of two extremities, or explain the reasons for finding that she did not meet Listing 1.05C. Moreover, the ALJ did address the applicable, amended listing, § 1.04, and found that Claimant did not meet the criteria to be presumed disabled under that listing. (See AR 21). The undersigned finds that the ALJ did not err in failing to discuss the applicability of a listing for an impairment that Claimant did not have.

**D.    Claimant's credibility.**

Claimant asserts that the ALJ erred in discounting the credibility of her testimony at the administrative hearing. (Doc. 9, pp. 7-8). However, the undersigned has considered ALJ Ross's

---

[8] Before the 2001 amendments, Listing 1.05C stated as follows:

Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

    1. Pain, muscle spasm, and significant limitation of motion in the spine; and

    2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

See Batson v. Comm'r of Soc. Sec. Admin. 359 F.3d 1190, 1195 n.2 (9th Cir. 2004) (appellate court review of the Commissioner's 1999 final decision).

credibility determination and finds no error.

A two step analysis applies at the administrative level when considering a claimant's subjective credibility. Smolen v. Chater, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. Id. at 1281-82. If claimant satisfies this test – and if there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." Id. at 1281. This level of specificity is crucial because, in its absence, effective judicial review may not be possible. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

Here, upon first setting forth a synopsis of Claimant's medical history (AR 21-25), ALJ Ross noted specific, clear and convincing reasons - supported by substantial evidence in the record - for discounting Claimant's subjective complaints, and the supposed limitations that went with them. (See AR 24-25). These included the following:

(1) Discrepancies between Claimant's assertions and the reports of treating and examining physicians. Notwithstanding the level of pain alleged by Claimant, objective diagnostic tests and reports based on physical examinations included in the record repeatedly reveal that Claimant's impairments had healed properly and that the extent of residual pain and symptoms had resolved or were mild. (See, e.g., AR 39, 48, 171, 267 (full use of fingers in right hand; carpal tunnel surgery had resolved symptoms); AR 261 (distal radius fracture and coccyx fracture healed properly but Claimant will have slight pain in her right wrist and coccygeal area and slight loss of motion in her right wrist; AR 311 (mild tenderness on palpitation over cervical muscles);  AR 15-16, 173-77, 325-26 (x-rays repeatedly evidencing solidly fused discs and directing Claimant to see doctor annually unless condition worsens; no medications prescribed and no aggressive treatment

recommended despite reports of increasing pain); see 20 C.F.R. § 404.1529(c)(2) ("[o]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work"); SSR 96-7p, 1996 WL 374186, *6 (July 2, 1996) (objective medical evidence may be used in evaluating credibility, although allegations of pain may not be disregarded solely because they are not substantiated by such evidence).

(2) Claimant's "sporadic" treatment record, particularly after final visit to Dr. Allyn and physical therapist in September 2002. (AR 15-16, 173, 261-63, 302, 325-26). As noted elsewhere in the ALJ's written determination, the records before the ALJ indicated that Claimant may have seen Dr. Mehdizadeh once after February 2002, although the entire record revealed the she saw both in 2003 and 2004. (AR 15-16, 173). As mentioned above, the x-rays, which were the only clinical tests from each visit, indicated that Claimant's discs remained solidly fused, and there was no evidence that Dr. Mehdizadeh physically examined Claimant during these visits. (Id.). See SSR 96-7p, 1996 WL 374186, *7 (July 2, 1996) ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

(3) Claimant did not question her doctor about different treatment modalities, such as additional physical therapy, or other available resources, that might have the potential to reduce her alleged severe and restrictive pains. (See, e.g., AR 173, 395 (complaining about increased pain but acquiescing to Dr. Mehdizadeh's conservative plan)). See Smolen, 80 F.3d at 1284 (in determining the credibility of the claimant, one consideration is his "unexplained or inadequately explained failure to seek treatment"); Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1049 (C.D. Cal. 1998) (ALJ properly found that claimant's conservative treatment regimen was inconsistent with complaints of extreme pain).

(4) Claimant's reported activities of daily living seemingly contradict her allegations of severe pain. For example, Claimant testified that she had problems lifting, bending, and reaching, yet she reported that she took care of her personal hygiene, vacuumed, did the laundry, grocery shopped, cooks, and does yard work, most of which require lifting, reaching (to wash one's hair,

///

reach groceries and ingredients on cabinets), and bending (yard work, grab clothes out of washer and/or dryer).  (AR 40-43, 60).

In light of the foregoing, the undersigned finds that ALJ Ross articulated clear grounds for his decision to discredit Claimant's subjective complaints, and that these grounds were supported by substantial evidence in the record.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("the ALJ may consider [claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains"); Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432, 433 (9th Cir. 1987) (upon giving "great weight to [the] ALJ's credibility assessment," the court concluded that it was supported by substantial evidence).]

## **CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded Claimant is not disabled.  This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this Court RECOMMENDS:

1. That Claimant's Social Security complaint be DENIED; and

2. That Judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Irene Calouro.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than ten (10) court days after service of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed and served no later than ten (10) court days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be served on the Magistrate Judge.  The District Judge will review the Findings and

Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's Order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 7, 2007**               **/s/ Theresa A. Goldner**
                                        UNITED STATES MAGISTRATE JUDGE